# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

_____

**RENEE Y. McNERNEY,**

**Plaintiff,**

                               Case No. 1:18-cv-1073-TPK

v,

**COMMISSIONER OF SOCIAL**         **OPINION AND ORDER**
**SECURITY,**

**Defendant**.

## OPINION AND ORDER

      Plaintiff Renee Y. McNerney filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by the Appeals Council on August 16, 2018, denied Ms. McNerney's applications for disability insurance benefits and for supplemental security income. Ms. McNerney has now moved for judgment on the pleadings (Doc. 16) and the Commissioner has filed a similar motion (Doc. 17). For the following reasons, the Court will **GRANT** Plaintiff's motion, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

## I. BACKGROUND

      Plaintiff's applications for disability insurance benefits and for supplemental security income were filed on June 23, 2014. She alleged that she became disabled on April 22, 2011, primarily due to problems with her back. She was 44 years old at the time these applications were filed.

      After initial administrative denials of her claim, Plaintiff appeared at an administrative hearing held on April 24, 2017. Plaintiff and a vocational expert, Mr. Steinbrenner, testified at the hearing.

      The Administrative Law Judge issued an unfavorable decision on July 28, 2017. She concluded that Plaintiff suffered from several severe impairments including C5-6 disc herniation with spinal cord compression, status post anterior cervical discectomy and fusion, lumbar spine degenerative disc disease, spondylolysis and spondylolisthesis, right shoulder cuff tendinitis, asthma, and obesity. According to the ALJ, these impairments limited Plaintiff to the performance of a reduced range of sedentary work. She could occasionally climb ramps and

stairs, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds. She could occasionally reach overhead with both arms and had to avoid concentrated exposure to dust, odors, fumes, and pulmonary irritants. She could not work at unprotected heights or around dangerous machinery, and was limited to simple, routine tasks, to following simple work-related decisions, and to dealing with minimal changes in work routines and processes.

Mr. Steinbrenner, the vocational expert, was asked about whether a person with Plaintiff's work capacity could do either Plaintiff's past work (which consisted of cashier, cook, and restaurant manager) or other jobs. He said that, taking into account the physical limitations described, Plaintiff could perform all of the past jobs and that she could also work as a telemarketer, ticket seller, or telephone survey worker. These latter positions would also be available to someone with the mental limitations which the ALJ found to exist  The ALJ accepted this evidence, along with evidence about the number of these jobs which exist in the national economy, and found that because Plaintiff could still perform substantial gainful activity, she was not disabled within the meaning of the Social Security Act.

Plaintiff, in her motion for judgment on the pleadings, asserts that there are two separate reasons for reversing the ALJ's decision and remanding the case. She argues, first, that the ALJ did not properly evaluate the opinions of the treating sources. Second, she asserts that the ALJ did not properly evaluate her subjective testimony concerning the extent of her limitations.

## II.  THE KEY EVIDENCE

Plaintiff's statement of errors focuses on the ALJ's evaluation of both the treating source opinion and her own subjective reporting of symptoms. The Court will summarize the evidence concerning each of these issues.

At the administrative hearing, Plaintiff first testified that she had attempted to work after her alleged onset date. She was hired as a toll collector by the New York State Thruway System, but had to quit after two weeks due to swelling in her neck and back. She thought that her problems were caused by repetitive right arm movement.

Plaintiff's most significant problems originated in 2011 when she fell while at work in a grocery store. Her right leg and her neck prevented her from going back to work, and, as of the hearing date, she could not work because there were days when she could not get out of bed. She collected unemployment benefits for a year after her injury. She had surgery on her neck in 2015, which substantially reduced her neck pain, and has had chiropractic treatment and physical therapy for her back. She also took Motrin for pain and had had injections, which did not help her.

As far as daily activities are concerned, Plaintiff testified that on some days she could shower, dress, do laundry, and attempt other chores like mopping and vacuuming. She had done yard work for several years after her injury but had not done so since her 2015 surgery. She spent her days sitting on the porch or at a park, playing cards, and watching television. Between 2015

and 2016 she had to lie down for up to five hours per day due to headaches and pain. Back surgery was recommended for her, but she was reluctant to agree to it.

The important medical records show the following. Her lower back conditions - bilateral spondylolysis and spondylolisthesis at L5, moderate bilateral foraminal stenosis and disc bulge at the same level, and annular tear and disc herniation at L4, and moderate disc bulge at L3 - were all diagnosed by MRI. (Tr. 352). An MRI of her cervical spine taken in 2012 showed small disc herniations at several levels. (Tr. 375). Dr. Beaupin, her treating physician, reported in July, 2011, that she had temporary disability "to a marked degree" with restrictions on bending, stooping, reaching, twisting, crawling, and climbing, and that she should also avoid use of her right arm above her waist. He imposed a ten-pound lifting restriction as well, and said that she should not sit or stand for more than two hours at a time without a break and that her total work day should not exceed eight hours. (Tr. 400-01). A roughly contemporaneous opinion from a chiropractor, Dr. Marconi, contained a lifting restriction of five pounds as well as limits on repetitive bending, stooping, lifting, and reaching, but it also noted that Plaintiff had not reached maximum medical improvement at that time. (Tr. 432-34).

Physical examinations done in 2012 showed limitation of motion in both the lumbar and cervical spines as well muscle spasms in the cervical and lumbar paraspinal areas. A note from 2012 shows that Dr. Beaupin diagnosed cervical disc herniation, cervical radiculitis, right rotator cuff sprain, lumbar disc herniation, and lumbar radiculopathy, and said that she was on 100% total disability at that time. (Tr. 380-83). Later that year, Dr. Beaupin said she had a 75% temporary partial disability, concluding, as he had in 2011, that she had to limit her bending, lifting, pushing, pulling, carrying, crawling, and climbing, that she had a weight restriction of ten pounds, and that she could sit and stand for two hours at a time. (Tr. 517).

Plaintiff was seen by Dr. Huckell in 2014. At that time, she said that her lower back was her worst problem. She reported that the medical pain management overseen by Dr. Beaupin had not worked, nor had physical therapy. She was undergoing chiropractic treatment which gave her temporary pain relief. The physical examination showed positive straight leg raising and functional range of motion of the shoulders, elbows, wrist, hips, knees, and ankles, with some limitations in the cervical and lumbar spines. At that time, back surgery was recommended, and Plaintiff was described as having a permanent partial disability due to her work injury. (Tr. 459-67).

Plaintiff underwent a workers' comp evaluation, done by Dr. Bergeron, on August 20, 2014. At that time, her neck pain was worse than her back pain. She had discontinued pain medications prescribed by Dr. Beaupin due to a fear of addiction, and was taking only Motrin for pain. She expressed a reluctance to have back surgery and said that she was able to live with her current pain level. She had a normal gait. She showed both neck and back discomfort on motion but it was minimal because she was having a good day. Straight leg raising was negative. Dr. Bergeron diagnosed chronic cervical and lumbar pain. He thought her prognosis was guarded and he did not expect further improvement. He also concluded that she might need surgery if her condition worsened. He did not express any opinion as to her functional capacity, however. (Tr. 437-47),

Plaintiff had surgery on her neck in 2015. Dr. Huckell saw her again in 2016, after her neck surgery, and although her neck was better, she continued to report ongoing low back pain, described as a fluctuating dull ache with pressure, as well as some right leg weakness and right foot numbness. The physical examination was much the same as in 2014, and she again was viewed as having a permanent partial disability, which, if she underwent back surgery, would be temporarily total for at least three months. (Tr. 583-87).

There are also numerous records of chiropractic treatment. In July, 2014, Plaintiff's chiropractor, Dr. Amabile, reported that she was totally disabled. (Tr. 637). The record contains other statements about disability from him, including a September 30, 2011 note stating that Plaintiff was limited to lifting between zero and ten pounds, could stand or walk for three to four hours in a workday, could sit for the same amount of time, had to avoid repetitive motions with her right hand, and also needed to avoid repetitive bending, climbing, twisting, stooping, overhead reaching, and kneeling. That note also said that as of October 10, 2011, she could work with those restrictions. (Tr. 627). In the 2014 note, Dr. Amabile also reported that Plaintiff had suffered an exacerbation of her injury earlier that year. *Id*. Finally, there are records showing that Plaintiff had been seen in an emergency room a number of times for treatment of her low back pain.

### III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV. DISCUSSION

### A. The Opinions of the Treating Sources

When this case was decided, the "treating physician" regulation found at 20 C.F.R. §416.927 was still applicable (it has since been repealed). As this regulation and its companion regulation, 20 C.F.R. §404.1527, have been interpreted,

> "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.' " [*Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir.2008)] at 128 (quoting 20 C.F.R. § 404.1527(c)(2)). There are, of course, circumstances when it is appropriate for an ALJ not to give controlling weight to a treating physician's opinion. *See, e.g., Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.2004) (per curiam) (holding that "the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts"). Nevertheless, even when a treating physician's opinion is not given controlling weight, SSA regulations require the ALJ to consider several factors in determining how much weight the opinion should receive. See 20 C.F.R. § 404.1527(c)(2)(I), (2)(ii), (3)–(6). "[T]o override the opinion of the treating physician, we have held that the ALJ must explicitly consider, inter alia: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir.2013) (per curiam). "After considering the above factors, the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.' " *Burgess*, 537 F.3d at 129 (alteration in original) (*quoting Halloran*, 362 F.3d at 33). The failure to provide " 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id*. at 129–30 [citation omitted]. The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion. *Id*. at 131.

*Greek v. Colvin,* 802 F.3d 370, 375 (2d Cir. 2015).

In the decision under review, the ALJ discussed the various opinions concerning Plaintiff's functional capacity. She first discounted the disability opinions from Dr. Amabile, who, as noted above, was one of Plaintiff's treating chiropractors, noting that a chiropractor is not a medically

acceptable source and that none of his opinions, with the exception of one dated September 20, 2011, provided a function-by-function analysis. The ALJ gave that opinion, which said that Plaintiff was able to return to work with various restrictions, some weight. (Tr. 23).

Next, the ALJ considered opinions found in various exhibits (4F, 7F, 8F, and 10F), expressed by either Dr. Beaupin or Dr. Huckell, but also viewed them as lacking a function-by-function analysis. Additionally, she pointed out that they expressed opinions in terms of state workers' compensation law, which has different standards from Social Security law. The ALJ gave Dr. Beaupin's 2011 opinion partial weight, not accepting his conclusion that Plaintiff could not use her right arm for above-the-waist activities, and she gave significant weight to his 2012 opinion that Plaintiff was limited in her ability to bend, lift, push, pull, carry, crawl, and climb, could lift up to ten pounds, and could stand or walk for two hours at a time. Lastly, she gave partial weight to the opinion of another chiropractor, Dr. Marconi, agreeing that Plaintiff had limitations on her ability to perform repetitive bending, stooping, lifting, and reaching. She did not think, however, that the five-pound lifting restriction contained in his opinion had any support in the record. *Id.* Based on the analysis of these opinions, the ALJ came up with the conclusion that Plaintiff could do sedentary work as long as she avoided more than occasional climbing of ramps and stairs, stooping, kneeling, crouching, crawling, and overhead reaching, and as long as the work did not involve exposure to certain environmental irritants or workplace hazards. Plaintiff asserts this conclusion is erroneous because it does not give proper weight to the various treating source opinions.

It is important to set out exactly what Plaintiff contends that the ALJ did wrong. First, she argues that the rationale given by the ALJ for assigning little weight to opinions from Drs. Huckell and Beaupin is incorrect because both were treating physicians and did not do their examinations at the request of the Workers' Compensation Bureau. *See* Doc. 16, at 19. Second, she points out that opinions from persons who are not acceptable medical sources (*e.g.* chiropractors) must still be considered and weighed using the factors set forth in 20 C.F.R. §404.1527. She criticizes the ALJ for giving weight only to those portions of the chiropractic opinions which support her residual functional capacity finding, and also for not commenting on Dr. Bergeron's report. She characterizes him as a chiropractor as well, although the record appears to show that he is an orthopedic surgeon, *see* Tr. 447. The Court notes that the ALJ did acknowledge Dr. Bergeron's findings (Tr. 22) and that he did not provide an opinion as to disability or functional capacity, so this contention will not be discussed further.

The ALJ provided two separate reasons for giving little weight to the various opinions expressed by Drs. Beaupin and Huckell, and they are not the reasons which Plaintiff attacks as insufficient. The ALJ correctly noted that neither provided any function-by-function analysis of Plaintiff's physical abilities, and also that, regardless of whether they performed their examinations at the request of the Workers' Compensation Bureau, they expressed their opinions in language used by that agency - that is, in terms of a percentage of partial disability. That is not the same standard as is used in Social Security cases, and an ALJ may properly conclude that such opinions do not provide much guidance in terms of whether a claimant's ability to work qualifies him or her for Social Security benefits. *See Ramirez v. Astrue,* 2014 WL 2520914, *10 (W.D.N.Y. Mar. 28, 2014)("Disability opinions under Workers' Compensation law are entitled to little weight

given that Social Security law is different than Workers' Compensation law"). Consequently, because the ALJ did not discount the treating physicians' opinions for the reasons attributed to her by Plaintiff, and because the reasons she gave were appropriate, her decision cannot be reversed under the "treating physician" rule.

As for the chiropractic opinions, Plaintiff has not explained how the ALJ's analysis of them should have been different under the various factors set out in 20 C.F.R. §404.1527. The ALJ clearly understood that Plaintiff had a treating relationship with both Dr. Marconi and Dr. Amabile. She also explained why she did not give weight to certain conclusions they reached when they did their function-by-function analysis, and Plaintiff has not argued that those reasons were improper or unsupported by the record. Essentially, her position appears to be that the ALJ should simply have accepted the chiropractic opinions in their entirety. That, however, is not the law. An ALJ is not required to accord the same deference to a treating chiropractor's opinion as must be done with a treating physician's opinion, and if an ALJ has reasons (other than the fact that a chiropractor is not an acceptable medical source) for discounting that opinion, that is sufficient to insulate the ALJ's decision from reversal. *See, e.g., Wood v. Comm'r of Social Security*, 2019 WL 4059017 (W.D.N.Y. Aug. 28, 2019). Because that is what happened here, the Court's finds Plaintiff's first argument to be without merit.

### B. The Credibility Determination

The other issue raised in Plaintiff's motion relates to the ALJ's determination that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record ...." (Tr. 18). Plaintiff argues that this finding was not adequately explained.

As this Court stated in *Wynn v. Comm'r of Social Security,* 342 F. Supp. 3d 340, 350 (W.D.N.Y. 2018):

> The ALJ, who has the "opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying," is "best-positioned to make accurate credibility determinations." *Whiting v. Astrue*, No. CIV.A. 1:12-274, 2013 WL 427171, at *6, 2013 U.S. Dist. LEXIS 15109, at *22 (N.D.N.Y. Jan. 15, 2013), *adopted*, 2013 WL 427166, 2013 U.S. Dist. LEXIS 14944 (N.D.N.Y. Feb. 4, 2013). As such, "credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Perez v. Barnhart,* 440 F.Supp.2d 229, 235 (W.D.N.Y. 2006) (quotation omitted).
>
> In assessing the credibility of a claimant's subjective complaints, the Commissioner's regulations require ALJs to employ a two-step inquiry. *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010). "First, the ALJ must determine whether the claimant suffers from a 'medically determinable impairment[ ] that could reasonably be expected to produce' " her symptoms. *Id*. (quoting 20 C.F.R. § 404.1529(c)(1) ). "Second, the ALJ must evaluate the intensity and persistence

of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Id*.

According to Plaintiff, the ALJ in this case erred in her analysis by not taking the medical records of pain and other symptoms properly into account. Plaintiff asserts that her reports of pain were consistent throughout the medical records and the ALJ did not explain adequately why she discounted those reports. In particular, she argues that the ALJ only summarized the testimony and records but did not identify or explain any inconsistencies which might exist.

The ALJ's explanation of her credibility determination went as follows. First, she articulated the correct legal standard, noting that there is a two-step process to be followed, involving determining if the claimant has a medically determinable impairment which might reasonably be expected to cause pain or other limiting symptoms, and, if so, evaluating the intensity, persistence, and limiting effects of those symptoms based on both the objective medical evidence and other evidence of record. (Tr. 17). That is the process outlined in 20 C.F.R. §404.1529, cited by the ALJ, and set forth in Social Security Ruling 16-3p.

Next, the ALJ summarized the information which Plaintiff supplied in her Function Report and in her testimony at the administrative hearing. She then discussed the various medical records, noting that Plaintiff did report neck and back pain on multiple occasions. Included in that summary were the results of the MRIs of the neck and back. After evaluating the opinion evidence in the manner described above, she reached this conclusion:

> In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record. Treatment notes in the record do not sustain the claimant's allegations of disabling symptoms. The claimant did experience some symptoms and limitations but only to the extent described in the residual functional capacity above.

(Tr. 23).

To be sure, that is not the most illuminating explanation of why the ALJ found Plaintiff's testimony to be less than fully consistent with the record. The Commissioner argues, however, that "[t]here is no requirement that [the] ALJ identify evidence [] which directly contradicts plaintiff's complaints." *See* Doc. 17, at 11. That is not quite so.

As the Court in *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 435–36 (S.D.N.Y. 2010) explained,

> If the ALJ rejects plaintiff's testimony after considering the objective medical evidence and any other factors deemed relevant, he must explain that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by

substantial evidence.

Other District Court decisions within this Circuit concur with this proposition. *See, e.g., Owens v. Berryhill*, 2018 WL 1865917, *9 (E.D.N.Y. Apr. 18, 2018); *Dahl v. Comm'r of Social Security*, 2013 WL 5493677 (Oct. 1, 2013). This Court has followed it as well. "The Commissioner cannot conclude without elaboration that a claimant's testimony is incredible because it is generally inconsistent with the evaluator's summary of the record." *Lynch v. Astrue,* 2011 WL 2516213, *8 (W.D.N.Y. June 21, 2011). It is the law in other Circuits, too. *See, e.g., Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994)*(*"If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so"). And, as Plaintiff has noted, this Court, in *Canzoneri v. Berryhill*, Case. No. 1:17-cv-00808-RJA (May 29, 2019) remanded a case to the Commissioner, stating that because "the ALJ does not discuss the reasons for discounting Plaintiff's statements, the Court cannot discern whether the ALJ's credibility determination is based on substantial evidence." *Id*., Doc. 22, at 5. Notably, the Commissioner's memorandum addresses none of these decisions.

There are cases where the contrast between the medical evidence and Plaintiff's testimony is so obvious that the ALJ, by reciting both, has provided an adequate explanation, *see Burton v. Berryhill,* 2019 WL 1936726, *8 (E.D.N.Y. May 1, 2019). However, that ruling clearly does not exempt the ALJ from providing a more explicit explanation in every case. That is especially so in a case like this where, as Plaintiff points out, she made consistent reports of significant pain to her treating physicians and chiropractors, and they obviously credited those reports by determining that she had a significant (or, in some cases, total) degree of disability.

In short, this is a case where, although the ALJ may have had good reasons for discounting Plaintiff's testimony about disabling symptoms - including the fact that she had many days where she could not get out of bed due to pain, that from 2015 to 2016 she had to lie down every day due either to pain or headaches, and that even two weeks of relatively non-strenuous work landed her in the emergency room - but the ALJ did not say what those reasons were, other than to recite, in formulaic language, that the medical records did not bear out Plaintiff's complaints. This lack of explanation, as the above cases point out, prevents the Court from engaging in a meaningful review of the ALJ's credibility determination and from determining whether it is based on substantial evidence. Therefore, a remand is needed in order to correct this deficiency.

## V. CONCLUSION AND ORDER

For the following reasons, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings, (Doc. 16), **DENIES** the Commissioner's motion (Doc. 17), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

/s/ Terence P. Kemp
**United States Magistrate Judge**